**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF MINNESOTA; CITY OF MINNEAPOLIS; and CITY OF ST. PAUL<br><br>Defendants. | Case No. |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff the United States of America submits the following Complaint against Defendants the State of Minnesota (State), the City of Minneapolis (CM), and the City of St. Paul (CSP). CM and CSP shall be referred to collectively as the "Cities."

## INTRODUCTION

1. The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." U.S. Const. amend. II.

2. The Second Amendment protects the pre-existing right to keep and bear arms. In *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010), the Supreme Court held that this right is among those fundamental rights necessary to our system of ordered liberty and incorporated it under the Fourteenth Amendment, thereby making it applicable to the states. *Id*. at 778. The Second Amendment protects the right of law-abiding Americans to possess and use weapons that are in common use for lawful purposes. *See New York*

*State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 21 (2022); *District of Columbia v. Heller*, 554 U.S. 570, 625-27 (2008).

3. The Second Amendment protects the right to possess arms and necessarily protects the right to acquire those protected arms. *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). The core Second Amendment right would mean very little without the ability to acquire firearms. *Nguyen v. Bonta*, 140 F.4th 1237, 1241 (9th Cir. 2025) (citation omitted). "[A]cquiring, purchasing, and possessing firearms is a necessary predicate to keeping and bearing them." *Ortega v. Grisham*, 148 F.4th 1134, 1143 (10th Cir. 2025) (citation omitted). Laws which hobble the Second Amendment and corresponding rights are unconstitutional. *See Wolford v. Lopez*, 146 S. Ct. 2032, 2041 (2026).

4. The State's permit to purchase and waiting period regulatory scheme violates the Second Amendment for the more than ninety percent of Minnesota citizens who do not have a carry permit. The Cities' law enforcement officers are charged with enforcing the State's unconstitutional restrictions and are doing so. Such law enforcement conduct is unlawful pursuant to 34 U.S.C. § 12601(a) (Section 12601). The United States brings this action to vindicate the constitutional rights of the law-abiding citizens of Minnesota.

**PARTIES**

5. Plaintiff is the United States of America.

6. The State of Minnesota is a state within the United States of America.

7. Minneapolis, Minnesota is a municipality.

8. St. Paul, Minnesota is a municipality.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345.

10. The Court has authority to grant the remedies Plaintiff seeks pursuant to the Violent Crime Control and Law Enforcement Act of 1994, 34 U.S.C. § 12601. The United States is authorized to initiate this action against Defendants under that Act.

11. The declaratory and injunctive relief that the United States seeks is authorized by 34 U.S.C. § 12601(b) and 28 U.S.C. §§ 2201 and 2202.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred therein.

## GENERAL ALLEGATIONS

### I. Regulatory Background: the State's Hybrid Waiting Period and Permit to Purchase Scheme.

13. People who desire to bear firearms in public in Minnesota may do so by obtaining a carry permit (Carry Permit). *See* Minn. Stat. § 624.714.

14. This action does not concern public carry. It concerns armed self-defense within the confines of a person's home, "where the need for defense of self, family, and property is most acute." *Heller*, 554 U.S. at 628.

15. The vast majority of people in the State (over 93 percent)[1] have not obtained a Carry Permit. However, Minnesota law generally prohibits individuals from purchasing any handgun or regulated rifle[2] until 30 days after a transferee report (Transferee Report) is delivered to the purchaser's local chief of police or sheriff. *See* Minn. Stat. § 624.7132 Subd. 4.

16. Thus, state law effectively creates a 30-day waiting period for Minnesotans, even if a person desires to use a firearm solely for defense of his or her home.

17. The State's law burdens the purchase of a handgun or regulated rifle in a second way. The statute refers to this method as a transferee permit (Minnesota Permit to Purchase). To obtain a Minnesota Permit to Purchase, a person must apply to the chief of police where the applicant resides, or the sheriff if there is no such local chief of police. Minn. Stat. § 624.7131 Subd. 1. Minnesota law allows the Minneapolis and St. Paul chiefs of police *up to 30 days* to grant the Minnesota Permit to Purchase. Minn. Stat. § 624.7131 Subd. 5.

---

[1] The State's population is 5,830,405. "United States Census Quick Facts Minnesota" (available at https://www.census.gov/quickfacts/fact/table/MN/PST045225). There are 375,551 permit holders. "BCA releases 2025 Permit to Carry Annual Report" (March 3, 2026) (available at https://dps.mn.gov/news/bca/bca-releases-2025-permit-carry-annual-report).

[2] For purposes of this complaint the term "regulated rifle" has the same meaning as the so-called "semi-automatic military-style assault weapon" in Minn. Stat. § 624.712 Subd. 7. Regulated rifles include AR-15 style rifles, the most popular rifle in America. *Id*.

18. Regardless of whether a Minnesota citizen uses the Minnesota Permit to Purchase process or the Transferee Report process, that person is required to wait up to thirty days to be allowed to purchase a firearm.

19. Minn. Stat. § 624.7131 Subd. 6, limits the validity of the Minnesota Permit to Purchase to Purchase to Purchase to one year. This amounts to an annual thirty-day waiting period every single year for Minnesota citizens who merely wish to defend their home.

20. Waiting periods for approvals from chiefs of police in St. Paul and Minneapolis commonly exceed the statutory limit of 30 days. Some citizens have been forced to wait nearly 60 days. There is no statutory penalty for law enforcement agencies that fail to act on applications within the statutory 30-day limit. Nor is there a remedy for applicants when this happens.

## II. The Permit to Purchase/Waiting Period Scheme Is Presumptively Unconstitutional.

21. In *Bruen*, the Supreme Court set forth the following test for evaluating Second Amendment claims:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

597 U.S. at 24.

22. In *Wolford*, the Court clarified step one of the *Bruen* test:

> [The analysis required in a Second Amendment case] involves two steps. First, a court must determine whether the law before it clashes with the plain text of the Amendment's language. This inquiry entails three subsidiary questions. First, does the law apply to the people—which is to say, to all members of the political

> community? Second, does it concern any form of Arms, i.e., any weapon customarily used for offensive or defensive purposes? Third, does the law place any restrictions on either the keeping (i.e., possession) or the bearing (i.e., carrying) of arms?
>
> If a challenged law falls within the plain text of the Second Amendment, *it is presumptively unconstitutional*—which means that it may violate the preexisting right that the Amendment codified. But because that right was not in every way coterminous with the Amendment's literal language, further analysis may be needed. Specifically, the relevant government—federal, state, or local may be able to show that its challenged law did not infringe the historical understanding of the codified right.

146 S. Ct. at 2043-44 (cleaned up; emphasis added).

23. Thus, step one of the *Bruen* test requires a court to ask three questions:

A. Does the law apply to the people?

B. Does it concern any form of arms?

C. Does the law place any restrictions on either the possession or carrying of arms?

24. Here, step one of the *Bruen* test is easily met. No one can reasonably dispute that: (1) the individuals who are subject to the burdens of Minnesota's Hybrid Waiting Period and Permit to Purchase Scheme (Minnesota Scheme) are among the "people;" (2) the Minnesota Scheme applies to arms; and (3) the Minnesota Scheme restricts the acquisition and the possession of arms.

25. This matter concerns the keeping of arms. The natural definition of keeping arms means to have those arms in an individual's possession. *Heller*, 554 U.S. at 582.

26. To keep arms naturally means the right to acquire firearms. *Nguyen v. Bonta*, 140 F.4th 1237, 1243 (9th Cir. 2025); *Ortega v. Grisham*, 148 F.4th 1134, 1143

(10th Cir. 2025); *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). One must obviously be able to acquire and possess firearms to do what the Second Amendment protects, i.e., the right to keep and bear arms for self-defense. *See Wolford*, 146 S. Ct. at 2041.

27. At *Bruen* step one, therefore, the plain text of the Second Amendment applies to the Minnesota Scheme. Therefore, the Minnesota Scheme is presumptively unconstitutional.

**III. The State Cannot Rebut the Presumption of Unconstitutionality.**

28. The burden under *Bruen* step one is on the party attacking the law (here, the United States with respect to law enforcement's pattern and practice in the implementation of the law) and the "history and tradition" burden under step two is on the government defending the law (here, the Defendants). *Hanson v. D.C.*, 120 F.4th 223, 232 (D.C. Cir. 2024), *abrogated on other grounds* by *Wolford v. Lopez*, 146 S. Ct. 2032 (2026).

29. Thus, the United States has completely met its burden to plead a plausible Second Amendment violation, and the burden shifts to Defendants in *Bruen* step two. It is not necessary to anticipate and counter Defendants' *Bruen* step two arguments—especially given that a plaintiff need only plead "the factual basis" of the complaint and need not "'set out a legal theory.'" *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). Nevertheless, Plaintiff includes this section to demonstrate that Defendants will not prevail at step two.

30. At *Bruen* step two, the Court's task is to determine whether "a firearm regulation is consistent with this Nation's historical tradition." *Bruen*, 597 U.S. at 17. "A variety of sources, including scholarship, may aid this inquiry." *Wolford*, 146 S. Ct. at 2044. The best evidence is historical analogues. *Id*. Analogues that were widely adopted and accepted are more persuasive. *Id*. A court must consider whether the analogues are "relevantly similar" to the modern law. *Id*. Regarding this inquiry, the "how" and "why" questions are important. *Id*. Did the proposed analogue impose a similar restriction and was it similarly justified? *Id*. An analogue need not be a "dead ringer" or "historical twin." *Id*. This is especially true when the modern law addresses a situation that could not have arisen when the Second or Fourteenth Amendment was adopted. *Id*. at 24. As set forth below, there are no historical analogues relevantly similar to the State's laws. Therefore, the State will be unable to rebut the presumption of unconstitutionality.

31. For Minnesotans who do not have a Carry Permit, Minn. Stat. § 624.7132 Subd. 4 effectively creates a waiting period of up to 30 days to purchase handguns and regulated rifles. Defendants will not be able to rebut the presumption of unconstitutionality because they will not be able to show that the State's waiting period is consistent with the nation's history and tradition of firearms regulation. *Ortega*, 148 F.4th at 1155 (seven-day waiting period unconstitutional); *Nguyen*, 140 F.4th at 1248 ("easily" concluding that modern law requiring a blanket wait of thirty days between firearm purchases was not "relevantly similar" to historic laws).

32. For Minnesotans without a Carry Permit, the Minnesota Permit to Purchase creates a potential exception to the original 30-day delay by substituting a different delay

that may last up to 30 days. Specifically, the local chief of police may delay granting the Minnesota Permit to Purchase for up to a maximum of 30 days following submission of an application. Defendants will not be able to rebut the presumption of unconstitutionality because they will not be able to show that the Minnesota Permit to Purchase does not infringe on the historical understanding of the right codified in the Second Amendment.

## IV. Defendants Enforce the Unlawful Prohibitions and the Unlawful Delays.

33. Defendant CM's Police Department is a law enforcement agency within Hennepin County, Minnesota. The Minneapolis Chief of Police is responsible for processing Hennepin County Minnesota Permit to Purchase applications under Minn. Stat. § 624.7131 subd. 1.

34. Defendant CSP's Police Department is a law enforcement agency of Ramsey County, Minnesota. The St. Paul Police Chief is responsible for processing Ramsey County Permit to Purchase applications under Minn. Stat. § 624.7131 subd. 1.

35. Law enforcement officers at the agencies identified above shall be referred to as "Minnesota LEOs." The unconstitutional provisions of the Minnesota Scheme identified above shall be referred to as "Unlawful Prohibitions."

36. Pursuant to the Minnesota state statutes identified above, the Minnesota LEOs enforce the Unlawful Prohibitions. Indeed, these law enforcement officers have the affirmative duty to process the applications of residents living within their jurisdictions as Minn. Stat. § 624.7131 subd. 5 states they "shall" issue or deny the applications of their jurisdiction within 30 days.

37. When the Minnesota LEOs enforce the Unlawful Prohibitions, they are engaging in a pattern or practice of conduct by law enforcement officers. On information and belief, the law enforcement officers are fulfilling (and will continue to fulfill unless enjoined) their statutory duty to enforce the Unlawful Prohibitions, and are engaged in a pattern or practice of law enforcement conduct that deprives individuals of their federal civil rights protected under the Second Amendment of the United States Constitution.

**V. Defendants Have Violated Section 12601.**

38. As pertinent to this action, 34 U.S.C. § 12601(a) states:

> It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers . . . that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

39. Minnesota, CM, and CSP are each a governmental authority as that term is used in Section 12601(a).

40. When the Minnesota LEOs enforce the Unlawful Prohibitions, they are acting as agents of and on behalf of these governmental authorities. The pattern or practice of conduct by law enforcement officers described above deprives citizens of rights, privileges, or immunities secured or protected by the Constitution. "Police are charged to enforce laws until and unless they are declared unconstitutional." *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979). Therefore, Defendants are in violation of 34 U.S.C. § 12601(a).

41. 34 U.S.C. § 12601(b) ("Section 12601(b)") states:

> Whenever the Attorney General has reasonable cause to believe that a violation of paragraph (1) has occurred, the Attorney General, for or in the name of the United States, may in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice.

(footnote omitted).

42. The United States brings this action pursuant to the authority set forth in Section 12601(b) to remedy the Defendants' violations of Section 12601(a).

**FIRST CLAIM FOR RELIEF**

43. Plaintiff incorporates and realleges all of the allegations set forth in the previous paragraphs.

44. Defendants have engaged in, and, on information and belief, will continue to engage in, a pattern or practice of conduct by law enforcement officers that deprives persons of rights secured and protected by the Constitution in violation of 34 U.S.C. § 12601(a).

45. Unless this Court enjoins Defendants and also grants the declaratory relief the United States is seeking, Defendants will continue to engage in the pattern or practice of conduct that deprives law-abiding individuals of their Second Amendment rights.

**PRAYER FOR RELIEF**

WHEREFORE, the United States hereby prays that the Court grant the following relief:

A. Entry of a declaratory judgment pursuant to 28 U.S.C. § 2201 (a), declaring that:

(1) The State of Minnesota, CM, and CSP are each a "governmental authority" as that term is used in Section 12601(a);

(2) Minnesota LEOs are "law enforcement officers" as that term is used in Section 12601(a);

(3) When the Minnesota LEOs enforce the Unlawful Prohibitions, they are acting as agents of (or otherwise acting on behalf of) the governmental authorities;

(4) When the Minnesota LEOs enforce the Unlawful Prohibitions, they are engaging in a pattern or practice of conduct by law enforcement officers;

(5) When the Minnesota LEOs enforce the Unlawful Prohibitions, the effect of that pattern or practice of conduct is to deprive Minnesota citizens of their rights guaranteed by the Second Amendment.

B. Entry of permanent injunctive relief pursuant to Fed. R. Civ. P. 65 enjoining Defendants from enforcing the Unlawful Prohibitions.

C. Such other and additional relief as the interests of justice may require.

DATED: September 24, 2026

Respectfully submitted:

DANIEL N. ROSEN
United States Attorney

DAVID W. FULLER
Civil Chief

U.S. Attorney's Office
District of Minnesota
600 U.S. Courthouse
300 South 4th Street
Minneapolis, MN 55415
(612) 664-5600

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

R. JONAS GEISSLER
Deputy Assistant Attorney General

BARRY K. ARRINGTON
Chief, Second Amendment Section

*/s/ Mark K. Hellie*

______________________________
MARK K. HELLIE, Atty. No. 0346251
KEITH W. GAINES
PETER J. ABERNATHY
Trial Attorneys
Second Amendment Section

United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Telephone:(202) 304-8447
E-Mail: barry.arrington@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA