UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

Plaintiff,

vs.

State of Minnesota, City of Minneapolis, and City of St. Paul,

Defendants.

Civil File No. 26-cv-04123 (KMM/DLM)

**DEFENDANT STATE OF MINNESOTA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A MORE DEFINITE STATEMENT**

## INTRODUCTION

The United States Department of Justice ("DOJ") named the State of Minnesota as a defendant to this lawsuit targeting processing times for law enforcement review and approval of gun-purchase (or transfer) permits. It brings the suit against Minnesota along with two municipalities, Minneapolis and St. Paul, because the municipalities' police departments process the permits.

The complaint neglects to allege that the State engaged in any wrongful conduct, bring any counts directed to Minnesota, or articulate how any of the relief it seeks applies to Minnesota. Given these failures, the complaint is simply unintelligible with respect to Minnesota, and the Court should require DOJ to file a new complaint containing a more definite statement of its claim so that Minnesota can fashion an appropriate response.

## BACKGROUND

### I. MINNESOTA'S FIREARM BACKGROUND CHECK FRAMEWORK.

Minnesota law does not impose "waiting periods" to purchase a firearm. However, Minnesota law does place conditions on how Minnesotans may purchase or transfer pistols

or semiautomatic military-style assault weapons.[1] *See* Minn. Stat. §§ 624.7131-.7132, 624.7134, 624.714. Generally, a person who wishes to obtain a pistol or assault weapon must pass a background check. *See* Minn. Stat. §§ 624.7131, subd. 10, 624.7132, subd. 8. To complete the background check, a person must either (1) obtain a permit to carry a pistol, (2) obtain a permit to purchase a firearm, or (3) have a licensed firearm dealer submit a transfer report to local law enforcement, then wait up to 30 business days for law enforcement to complete a background check for the transfer. Minn. Stat. §§ 624.7131-.7132, 624.7134, 624.714.

A "permit to carry" authorizes a person to carry a pistol in a public place. Minn. Stat. § 624.714, subd. 1b. To obtain a permit to carry, a Minnesota resident may apply to the sheriff of the county where the person resides. Minn. Stat. § 624.714, subd. 2(a). The sheriff must then complete a background check on the person. Minn. Stat. § 624.714, subd. 4. If the person passes the background check, provides evidence that they received valid training in the safe use of a pistol, are at least 21 years old, and are a citizen or permanent resident of the United States, the sheriff shall issue a permit to carry within 30 days of the application. Minn. Stat. § 624.714, subds. 2(b), 6. If the sheriff fails to deny a permit within 30 days, the permit is automatically granted. Minn. Stat. § 624.714, subd. 6(b).

A "permit to purchase," also referred to as a transferee permit, authorizes a person to purchase (or otherwise receive) a pistol or semiautomatic military-style assault weapon.

[1] Minnesota law does not require a background check for transfers of firearms that are not defined as pistols or semi-automatic military-style assault weapons, such as "shotguns, rifles and other longguns of the type commonly used for hunting." Minn. Stat. § 624.711.

Minn. Stat. §§ 624.7131-.7132, 624.7134. To obtain a permit to purchase, a Minnesota resident may apply to the chief of police of the municipality where the person resides, or to the county sheriff if there is no chief of police. Minn. Stat. § 624.7131, subd. 1. The police chief or sheriff must then complete a background check on the person. Minn. Stat. § 624.7131, subd. 2. If the person passes the background check, the police chief or sheriff shall issue a permit to purchase within 30 days of the application. Minn. Stat. § 624.7131, subd. 5(a).

If a person does not have a permit to carry or a permit to purchase, they may nonetheless purchase a pistol or semiautomatic military-style assault weapon from a federally licensed firearm dealer if the seller files a "transfer report" with the local chief of police or sheriff. Minn. Stat. § 624.7132, subds. 1, 8. Upon receipt of a transfer report, the police chief or sheriff must complete a background check on the proposed purchaser. Minn. Stat. § 624.7132, subd. 2. If the police chief or sheriff determines that the purchaser may not lawfully possess a firearm, they must inform the seller and purchaser. Minn. Stat. § 624.7132, subd. 3-5. If the police chief or sheriff does not make a determination within 30 business days, the dealer may proceed with the transaction. Minn. Stat. § 624.7132, subd. 4. And, if the police chief or sheriff determines that the purchaser is eligible to possess a firearm before the 30 days elapses, they may waive all or a portion of the background check period. Minn. Stat. § 624.7132, subd. 4.

Each of these steps involve oversight by municipal law enforcement agencies. The Minnesota state government does not grant or deny permits to carry, permits to purchase, or transfer reports. *See* Minn. Stat. §§ 624.7131-.7132, 624.7134. While the Minnesota

Department of Public Safety maintains an automated Gun Permit Background Check System to enable municipalities to efficiently conduct background checks, the Department does not process any applications itself. *See MNJIS products and services*, Minnesota Bureau of Criminal Apprehension, https://dps.mn.gov/divisions/bca/bca-divisions/criminal-justice-information-services/mnjis-services-law-enforcement/mnjis-products-and-services (accessed Oct. 15, 2026).[2] And the background check system responds to an inquiry by a local law enforcement official in mere moments—it adds virtually no time to the process for reviewing an application.

## II. The United States' September 17 Letter and September 24 Complaint.

On September 17, DOJ sent a letter to Minnesota, Minneapolis, and Saint Paul regarding Minnesota's firearm background check framework. Decl. of Mara Sybesma, Ex. 1. DOJ claimed, without sharing any evidence, that background check waiting periods in Saint Paul and Minneapolis "commonly exceed the statutory limit of 30 days." *Id.* at 2. DOJ asserted that the transfer report and permit to purchase procedures "violate Minnesota residents' Second Amendment rights by imposing unnecessary and prejudicial delays" and that "the St. Paul and Minneapolis Police Departments' implementation of these policies constitutes a pattern or practice of law enforcement misconduct that deprives persons of

[2] Courts may consider matters embraced by the complaint, items subject to judicial notice, or matters of public record in reviewing a motion under Rule 12(b)(6). *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). It stands to reason, then, that the Court may consider such materials in evaluating a motion under Rule 12(e). Indeed, courts have considered affidavits in ruling on Rule 12(e) motions. *See* 5C Wright & Miller, Federal Practice & Procedure § 1378, n. 23-24 (3d ed. 2026) (collecting cases).

their constitutional rights." *Id.* Despite focusing on Minneapolis and Saint Paul's alleged application of the permit to purchase and transfer report statutes, DOJ demanded that the State of Minnesota "immediately cease enforcement of the statutes," "acknowledge the unconstitutionality of these statutes," and "agree to enter into a court-enforceable consent decree permanently enjoin [sic] the violation of citizens' constitutional rights through these or any similar laws." *Id.*

While DOJ expressed concerns with the alleged duration of firearm background checks conducted by local law enforcement, it did not explain what (if any) legal responsibility it placed on *the State* for such purported delays. Given its experience with federal civil rights investigations, Minnesota would have expected the DOJ to conduct an investigation, as DOJ often does in the ordinary course of its civil rights work.[3] DOJ has ample investigative tools at its disposal. Yet in this case, Minnesota did not receive, and is not aware of, any investigative demands from DOJ. The United States has not contacted Minnesota to obtain documents, nor has it requested to interview any state employees.

All of this seemed curious to Minnesota. So, seeking clarification, Minnesota sent a letter to DOJ on September 23. Decl. of Mara Sybesma, Ex. 2. In it, Minnesota noted that DOJ had not "identified the precise portions of the statutes referenced in its letter that it contends are unconstitutional," and that it was "unclear whether [DOJ's] position is that

---

[3] *See, e.g.*, *McElroy, et al., v. Fulton County, et al.,* No. 1:24-cv-004731 (VMC), 2026 WL 2973057, at *3 (N.D. Ga. Sept. 8, 2026) (16-month civil rights investigation); *United States v. City of Meridian*, No. 3:13-CV-978 (HTW/LGI), 2022 WL 5512161, at *1 (S.D. Miss. Feb. 23, 2022) (8-month civil rights investigation); *United States v. Johnson*, 28 F. Supp. 3d. 499, 503 (M.D.N.C. 2014) (2 years, 3 months civil rights investigation).

Minnesota's laws are unconstitutional no matter how they are applied, or whether it is investigating particular applications of the law." *Id.* at 2. Minnesota requested that DOJ "clarify its concerns and supply the State with evidence supporting those concerns." *Id.*

DOJ failed to respond. It did not issue any new investigative requests to Minnesota (and Minnesota is not aware of any such requests to Minneapolis or St. Paul). DOJ did not clarify its letter with any greater factual detail or legal analysis. And DOJ did not supply any evidence supporting its claims. Instead, DOJ filed this lawsuit just one day after receiving Minnesota's inquiries.

The complaint contains no additional (or better) information or more specific allegations than the letter. DOJ continues to assert that Minnesota's background check framework violates the Second Amendment in certain circumstances, *see* Complaint ¶¶ 21-32, ECF No. 1 ("Compl."), and alleges that "law enforcement officers" that enforce the background check framework have engaged in a "pattern or practice of conduct" that deprives persons of Constitutional rights in violation of 34 U.S.C. § 12601. *Id.* ¶¶ 38-45.[4] As a purported pattern-and-practice case, the complaint alleges some conduct by "law enforcement officers" but none by any Minnesota state personnel. *Id.* ¶¶ 33-37. The complaint's "First Claim For Relief" section contains no information that would allow Minnesota to understand the factual or legal nature of DOJ's claim(s) against the state. *See id.* at 11. And the complaint directs its requested relief to the conduct of municipal law enforcement officers that are outside of Minnesota's control. *Id.* at 11-12.

---

[4] By seeking a more definite statement, Minnesota expressly preserves and does not waive any objection to DOJ's application of 34 U.S.C. § 12601.

Thus, it is entirely unclear whether the complaint alleges any unlawful acts or omissions by the State of Minnesota. *See id.* ¶¶ 38-45. The complaint does not bring any counts against Minnesota. And it seeks no relief as to Minnesota.

## STANDARD OF REVIEW

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The question is "whether it is possible to frame a response to the pleading." *Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 901 (D. Minn. 2013). While Rule 12(e) motions are generally "disfavored," a more definite statement is appropriate "where the allegations are so vague or unintelligible that no reasonable response can be expected." *Rose v. Enriched Living, LLC*, No. 25-cv-3234 (JWB/DTS), 2026 WL 2498134, at *9 (D. Minn. July 14, 2026) (quotation omitted), *R&R adopted*, 2026 WL 2495885 (D. Minn. Aug. 25, 2026). If a defendant "cannot determine from the complaint what the issues are to which it must respond, or if the complaint is ambiguous or omits important information so that it cannot be answered, a motion for a more definite statement is proper." *Mack v. Equifax Info Servs., LLC*, No. 20-cv-557 (PJS/KMM), 2020 WL 3052091, at *2 (D. Minn. May 11, 2020), *R&R adopted*, 2020 WL 3048017 (D. Minn. June 8, 2020).

## ARGUMENT

### I. THE UNITED STATES MUST TELL MINNESOTA WHY IT IS BEING SUED.

The United States generally contends that Minnesota violated the law, Compl. ¶¶ 6, 39-40, 42-45, but does not allege any facts in support of this contention. The United States

does not allege any facts as to Minnesota's purported conduct, does not set forth any counts describing Minnesota's legal liability, and seeks no relief that Minnesota can provide. Because Minnesota cannot reasonably respond to a complaint that does not explain why Minnesota is being sued, the Court should order the United States to file a new complaint containing a more definite statement of its claim against Minnesota.

Courts in this District have ordered parties to provide a more definite statement when a pleading generally alleges that an opposing party violated the law but does not explain how. *See*, *e.g.*, *Martin v. Brott*, No. 24-cv-00964 (PJS/ECW), 2025 WL 1687834, at *2-*4 (D. Minn. May 16, 2025) (granting motion for more definite statement where complaint "[did] not actually contain any facts as to" named defendants); *Mack*, 2020 WL 3052091, at *3 (ordering more definite statement where complaint solely listed statutory provisions that plaintiff claimed defendant violated); *TranSurety, LLC v. Cardot*, No. 08-cv-5746 (JRT/JJG), 2009 WL 1069476, at *2 (D. Minn. Apr. 24, 2009) (ordering more definite statement where pleading asserted "violations of law without offering any allegations to explain how those violations occurred"); *Eisenach v. Miller-Dwan Medical Center*, 162 F.R.D 346, 347-48 (D. Minn. 1995) (granting motion for more definite statement where complaint generally alleged that defendant violated statute, but did not allege facts in support of a violation). Indeed, a more definite statement is appropriate when a pleading fails to provide sufficient notice to the opposing party of the claims against it. *Swierkiewicz v. Sorema N.A.*, 122 S.Ct. 992, 998 (2002).

These authorities directly apply here. DOJ alleges a single cause of action: a violation of 34 U.S.C. § 12601. Compl. ¶¶ 38-45. This statute provides:

> (a) UNLAWFUL CONDUCT.
>
> It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers or by officials or employees of any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.
>
> (b) CIVIL ACTION BY ATTORNEY GENERAL.
>
> Whenever the Attorney General has reasonable cause to believe that a violation of paragraph (1) has occurred, the Attorney General, for or in the name of the United States, may in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice.

34 U.S.C. § 12601. In other words, the law proscribes (1) a governmental authority, its agents, or those acting on its behalf, from (2) engaging in a pattern or practice of conduct, (3) by law enforcement officers, or by employees of an agency administrating juvenile justice, that (4) deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States. *Id.*

The complaint lacks relevant facts for most of these factors with respect to all defendants, but the absence is especially glaring with respect to the State. While the complaint alleges that Minnesota is a "governmental authority," Compl. ¶ 39, and generally claims that all "Defendants have engaged in…a pattern or practice of conduct by law enforcement officers that deprives persons of rights secured and protected by the Constitution," Compl. ¶ 44, that is not enough. The complaint wholly (and conspicuously) fails to identify any "law enforcement officers" or "officials or employees of [a] government agency with responsibility for the administration of juvenile justice" employed by the State of Minnesota. *See* Compl. ¶¶ 33-35. Nor does the complaint describe what

"pattern or practice of conduct" that DOJ contends state employees unlawfully engaged in. *Id*. That silence speaks volumes. For lack of any other allegation, DOJ generally criticizes Minnesota's firearm background check framework—but does so without explaining why it is suing Minnesota.

DOJ should enumerate specific counts describing its claim for relief against each party, including Minnesota, and the DOJ's failure to do so demonstrates the complaint's unintelligibility. *See generally* Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests"). DOJ's "First Claim for Relief" section is the archetype of an "unadorned, the-defendant-unlawfully-harmed-me accusation" that does not satisfy notice pleading. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see generally Triumph Actuation Sys.-Yakima, LLC v. Cirrus Design Corp.*, No. 25-cv-1326 (NEB-LIB), 2026 WL 1208957 (D. Minn. Mar. 24, 2026) (dismissing complaint that contained only conclusory assertions). While a section setting forth specific counts is not an explicit requirement under the notice pleading standard, it can be informative: especially when the rest of the complaint so plainly fails the pleading standards set forth in *Twombly* and *Iqbal*. The complaint's failure to enumerate counts is telling of its inadequacy.

Further, DOJ does not identify any valid relief against Minnesota in the complaint's "Prayer for Relief" section. Compl. at 11-12. The sole injunctive relief that the United States seeks is "enjoining Defendants from enforcing the Unlawful Prohibitions," Compl. at 12, but the United States does not identify what the "Unlawful Prohibitions" are, *see* Compl. at 9, let alone whether Minnesota even "enforces" them. While DOJ asks the Court

to declare that Minnesota is a "governmental authority," every other component of declaratory relief is directed to municipal law enforcement officers, and the United States cannot seek declaratory relief against Minnesota unless it properly seeks some other remedy. *California v. Texas*, 593 U.S. 659, 672 (2021) (noting that declaratory relief requires that a plaintiff have standing for another remedy). The complaint does not describe what relief the United States seeks against Minnesota, and it does not provide fair notice of the United States' claim.

Because of this missing information—on at least these factual, legal, and relief fronts—the complaint is unintelligible as to Minnesota. It is so ambiguous that Minnesota cannot reasonably prepare a response. Minnesota cannot respond to an allegation that it "[is] in violation of 34 U.S.C. § 12601(a)" without knowing how the federal government believes Minnesota has violated this statute. *See* Compl. ¶ 40. Minnesota cannot reasonably defend the alleged conduct of "law enforcement officers" that are not in its control (and that DOJ has not identified). *See* Compl. ¶ 44. And, Minnesota cannot answer for an alleged pattern or practice of conduct without knowing what DOJ claims that pattern or practice is, or how Minnesota is responsible for it.

In a different lawsuit earlier this year, the DOJ alleged that Minnesota law violated Title VII of the Civil Rights Act of 1964 and Minnesota unsuccessfully moved for a more definite statement. *United States v. Minnesota*, No. 26-CV-273 (PJS/RWG/DPM/SGE), 2026 WL 1470343, at *1 (D. Minn. May 26, 2026). Minnesota argued that the DOJ's complaint was unintelligible because it failed to identify any pattern or practice of discrimination. *Id.* The court denied the motion, in part, because the DOJ clarified that it

was bringing a facial challenge to specific laws (as opposed to an as-applied challenge to specific conduct), which it may do under Title VII. *Id.*, at *3. Here, by contrast, the DOJ bases its complaint under 34 U.S.C. § 12601, which does *not* authorize the DOJ to bring a facial challenge to the constitutionality of a statute. *United States v. Montgomery County, Maryland, et al.*, No. 26-cv-03025 (TDC), 2026 WL 3386118, at *4-*15, (D. Md. Nov. 9, 2026). With respect to Minnesota, the complaint fails to identify any pattern or practice of conduct by law enforcement officers or seek any relief against the State. This complaint is far more deficient than the complaint in *United States v. Minnesota*, No. 26-cv-273, and a more definite statement is appropriate.

At bottom, Minnesota "cannot determine from the complaint what the issues are to which it must respond." *Mack*, 2020 WL 3052091, at *2. Minnesota seeks a more definite statement in order to understand the factual and legal bases of DOJ's contentions and build a full record to rebut them. The Court should require the United States to provide a more definite statement.

## CONCLUSION

The complaint is deficient. It fails to meet the legal requirements for setting forth an adequate and intelligible complaint under the notice-pleading standard. *See, e.g.,* Fed. R. Civ. P. 8(a); *Iqbal*, 556 U.S. at 678. Minnesota respectfully requests that the Court order the United States to file a new complaint containing a more definite statement. An amended complaint should set forth at least:

1) The factual bases on which DOJ alleges that Minnesota has engaged in any unlawful conduct—including any alleged pattern and practice and Minnesota's role and/or responsibility in it;
2) Counts providing specific causes of action against Minnesota; and
3) What relief can be obtained from Minnesota.

Dated: November 10, 2026.

KEITH ELLISON
Attorney General
State of Minnesota

**s/ Christy L. Hall**
CHRISTY L. HALL
Special Counsel
Atty. Reg. No. 0392627

MARA SYBESMA
Special Counsel
Atty. Reg. No. 0403770

LINDSEY E. MIDDLECAMP
Special Counsel
Atty. Reg. No. 0392589

445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2125
(651) 300-1558 (Voice)
(651) 282-5832 (Fax)
Christy.Hall@ag.state.mn.us

*Attorneys For Defendant*
*State Of Minnesota*